IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLINTON CRADDOCK | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DARBY BOROUGH, et al. | : | NO. 12-4519 |

MEMORANDUM OPINION

McLaughlin, J.                                    April 22, 2015

        This action arises from a March 18, 2011 confrontation
between Clinton Craddock – at the time a Colwyn Borough Police
Officer – and certain members of the Darby Borough Police
Department.  Craddock brought claims against Darby Borough
Police Chief Robert Smythe and Corporal Bryan Baker under 42
U.S.C. § 1983 claiming they violated his First, Fourth, and
Fourteenth Amendment rights; under 42 U.S.C. § 1985 claiming
they conspired to violate his civil rights; for conspiracy and
discrimination under Pennsylvania law; and for assault and
battery.[1]  Craddock also brought claims against Darby Borough for
municipal liability for Smythe and Baker's constitutional
violations and for discrimination.

        Darby Borough has filed a motion for summary judgement
on all claims, and Smythe and Baker have filed partial motions

---

[1]     On October 5, 2012, the Court granted in part the
defendants' motion to dismiss and dismissed all claims against
Joseph Gabe, Tanya Deaver, and Brian Evans, and dismissed
Craddock's 42 U.S.C. § 1986 claim against Darby Borough, Smythe,
and Baker.

for summary judgment on all claims except the state law assault and battery claims.[2]   For the reasons outlined below, the Court grants the defendants' motion for summary judgment in its entirety.   The Court will dismiss the remaining state law assault and battery claims without prejudice.

I.   <u>Summary Judgment Record</u>[3]

On March 18, 2011, Craddock was a police officer with the Colwyn Borough Police Department. While on duty in Colwyn Borough, Craddock was approached by an individual who told him that a woman had been assaulted and was lying in the street at the corner of 5th Street and Main Street in Darby Borough, a municipality adjacent to Colwyn Borough.   Craddock immediately drove his patrol vehicle to the corner of 5th Street and Main Street.   Craddock Tr. 5:19-6:3; 8:10-11:12.

Both parties recognize tension existed between the Colwyn and Darby Borough Police Departments on March 18, 2011. Darby Borough had limited Colwyn's access to its facilities and systems because it did not "believe that Colwyn police officers

---

[2]    The plaintiff has withdrawn his claims for intentional infliction of emotional distress and defamation.   <u>See</u> Pl.'s Opp. to Def.'s Mot. for S.J. at 41.

[3]    On a motion for summary judgment, the Court considers the evidence in the light most favorable to the non-moving party. <u>Tolan v. Cotton</u>, 134 S.Ct. 1861, 1866, (2014). The facts set forward herein are undisputed unless otherwise noted.

[were] trained." Craddock described the tensions as
"political." Craddock Tr. 29:23-31:8; Smythe Tr. 83:21-90:14.

When he arrived at the scene in Darby Borough,
Craddock saw a woman lying in the street and parked his vehicle
in a position to "protect [the victim] from oncoming traffic."
Craddock then contacted the Delaware County Communications
Center ("DelCom") and requested that the Darby Borough Police
and paramedics be sent to the scene. Craddock then handcuffed
the suspected attacker, placed him in the back of his patrol
vehicle, and began searching the National Crime Information
Center [NCIC] database to see if the suspected attacker had
arrest warrants. Craddock Tr. 9:8-21; Baker Tr. 10:8-21.

Officers and paramedics with the Darby Borough Police
Department – including Smythe and Baker – arrived at the scene
shortly after Craddock contacted DelCom. Craddock observed
Smythe and Baker have a brief conversation upon arrival, but had
no knowledge of what was discussed. Craddock Tr. 58:6-59:24.

Soon after he arrived, Smythe approached Craddock's
patrol vehicle on the driver's side. What happened next is
disputed. Craddock testified that Smythe said: "didn't I tell
you to stay the fuck out of my town, nigger," to which Craddock
responded that he had been flagged down. According to Craddock,
Smythe responded that he "didn't give a shit" and again told
Craddock to stay out of Darby. Craddock testified that Smythe

3

then slammed the door of the patrol vehicle on Craddock's left leg, striking it above the ankle.  Smythe disputes both that he called Craddock a "nigger" and that he slammed the door on Craddock's leg.  The video of the events produced by the defendants does not capture Smythe slamming the door.[4]  Craddock Tr. 13:10-14:10, 15:20-16:2; 23:12-24:6.

Immediately after Smythe allegedly slammed the door, Smythe walked away and Craddock exited the vehicle and rushed toward Smythe.  On the video Craddock can be heard yelling unintelligibly at Smythe and can be seen lunging and pushing Darby Borough police officers in an attempt to reach Smythe. While Craddock was attempting to get to Smythe, Baker approached Craddock and pushed him in the chest and screamed "get out of Darby."  Baker can be seen on the video touching Craddock's chest with both hands to separate him from Smythe.  Craddock testified that the Darby Borough police officers were "holding back" both himself and Symthe and had they not been doing so "it probably would have been a physical altercation."  Craddock Tr. 13:22-14:10, 24:7-25:16, 66:12-68:3; Baker Tr. 17:4-12, 33:24-34:1, 51:1-52:7; Smythe Tr. 82:6-19, 231:17-233:8; Def's Ex. 6.

---

[4]    The Court reviewed the video of the incident produced by the defendants (Def's Mot. for S.J. Ex. 8) and has relied on the video in outlining the summary judgment record.  The plaintiff does not dispute the authenticity of the video and the plaintiff's characterization of the facts does not conflict with the events as depicted on the video except where otherwise noted.

After the altercation, Craddock returned to his car to notify DelCom of the fight. Craddock testified that when he tried to reach DelCom on his radio, he could see Darby Borough police officers "keying up" their own car radios to block access to his radio channel; Craddock did not try to use a different radio channel and instead used his personal cell phone to call DelCom to notify them that he had been assaulted by Smythe and would be going to the hospital. Craddock Tr. 26:3-13; 65:6-66:11. Craddock Tr. 74:7-23.

After the call, Craddock was unable to leave the scene of the incident immediately because his patrol car was blocked by Darby Borough emergency response vehicles that had surrounded him upon arriving at the scene. Craddock testified that he was not able to leave the scene for five to ten minutes; the video, however, makes it clear that he could not move his car for fewer than five minutes. Craddock Tr. 26:3-27:7, 87:8-11; Baker Tr. 25:16-23; Smythe Tr. 107:3-108:2; Def.'s Mot. for S.J. Ex. 8 minutes 6:17-9:42.

Craddock was treated at Mercy Fitzgerald Hospital in Darby for a bruised leg. He was given ice, crutches, and pain killers and told to rest. Due to his injury, Craddock did not work "for about a week or two." Craddock Tr. 33:7-35:11.

According to Craddock, "shortly after" the March 18, 2011 incident he contacted the District Attorney to initiate an

investigation.  He was interviewed by detectives, and the case was referred to the Pennsylvania Attorney General, who determined that no criminal charges were warranted and concluded the investigation.  Craddock Tr. 55:7-58:2; Def's Mot. for S.J. Exs. 8-9.

While he was not working, Craddock claims he received anonymous phone calls threatening his life and instructing him not to return to work.  Craddock testified only that he "believed" the calls came from Darby Police officers in the Darby police force; he did not recognize the voice of any caller and had no evidence that the calls were in fact made by Darby police officers.  Craddock Tr. 38:6-39:9.

On April 26, 2011, Craddock received a letter from Smythe's attorney notifying Craddock that he had "no extra privileges as an officer of the Colwyn Police Department when setting foot into Darby Borough."  The letter continued:

> Specifically, your actions of March 18, 2011 amounted to nothing less than a crime.  Should you choose to behave in that manner again while on Darby Borough soil, you will be promptly arrested and prosecuted.

Craddock testified that after receiving the letter he only went into Darby Borough in the scope of his official duties and not for any personal reasons because he feared arrest. Craddock Tr. 49:3-51:17, 52:10-21, 61:7-21, 62:17-64:11.

Craddock resigned for Colwyn Police Department following the incident, but he testified that his resignation from Colwyn had nothing to do with the incident.  Craddock Tr. 58:3-5.

II.  <u>Analysis</u>[5]

The defendants have argued in their motion for summary judgment that there are no genuine issues of material fact regarding Craddock's First Amendment retaliation claims, Fourth Amendment excessive force claims, Fourteenth Amendment equal protection claim, conspiracy claims, or claim under the Pennsylvania Human Relations Act, and that they are entitled to summary judgment.  The defendants further argue that they are entitled to qualified immunity for Craddock's constitutional claims.  The Court agrees that there are no genuine issues of

---

[5]  Under Federal Rule of Civil Procedure 56, a party moving for summary judgment must show that there is no genuine issue as to any material fact and that judgment is appropriate as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once a properly supported motion for summary judgment is made, the burden shifts to the nonmoving party, who must set forth specific facts showing that there is a genuine issue for trial.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  <u>Id</u>. at 247-48.

material fact as to those claims and grants the defendants'
motion for summary judgment.

    A.    <u>First Amendment Retaliation Claims</u>

        Craddock has claimed that the defendants violated his
First Amendment rights by retaliating against him for reporting
the events of March 18, 2011 to local authorities.
Specifically, Craddock has claimed that: (1) members of the
Darby Borough Police Department "keyed up" their radios to
prevent him from reporting the incident to DelCom; (2) members
of the Darby Borough Police Department called him and threatened
him following the incident; and (3) Smythe instructed his
attorney to write a threatening letter to Craddock.  There is
not sufficient evidence in the summary judgment record to
support Craddock's First Amendment claims.  The Court,
therefore, grants the defendants' motion for summary judgment as
to Craddock's First Amendment claims.

        To establish a Section 1983 claim for retaliation in
violation of the First Amendment, a plaintiff must present facts
that show: "(1) constitutionally protected conduct, (2)
retaliatory action sufficient to deter a person of ordinary
firmness from exercising his constitutional rights, and (3) a
causal link between the constitutionally protected conduct and
the retaliatory action."  <u>Thomas v. Ind. Twp.</u>, 463 F.3d 285, 296

(3d Cir. 2006); see also West v. Atkins, 487 U.S. 42, 48 (1988). The central question in determining whether the plaintiff has established retaliation is whether the conduct alleged would be sufficient to deter a person from exercising his First Amendment rights.  McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006).

The First Amendment does not protect against conduct that is only unpleasant or unprofessional.  "It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise."  Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000).

At issue is whether the actions alleged were sufficient to deter a person of "ordinary firmness" from exercising his First Amendment rights.[6]  Whether the allegedly retaliatory action is sufficient to deter protected conduct is "a fact intensive inquiry focusing on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts[,]" which must be more than trivial.  Brennan v. Norton, 350 F.3d 399, 419 (3d Cir.2003); see also Koren v. Noonan, 586

---

[6]   As a public employee, a police officer's speech is constitutionally protected if the officer speaks as a citizen and the speech involves an issue of public concern.  Garcetti v. Ceballos, 547 U.S. 410, 418 (2006); see also Kline v. Valentic, 283 F. App'x 913, 916 (3d Cir. 2008).

F. App'x 885, 888 (3d Cir. 2014)(explaining that the "more than mere criticism, false accusations, or verbal reprimands" is needed to establish a retaliation claim).

      1.   Darby Borough Police Officers "keying up" radios

There is no evidence in the summary judgment record to support Craddock's claim that the Darby Borough police officers who allegedly "keyed up" their microphones violated his First Amendment rights.[7]  Craddock testified that he saw Darby Borough police officers "keying up" the microphones in their patrol vehicles as he attempted to contact DelCom, and that as a result he could not use his patrol vehicle radio to contact DelCom. Instead, Craddock immediately used his personal cell phone to contact DelCom.  Although the conduct described by Craddock may have presented a brief inconvenience, it was non-threatening, non-intimidating, and was not sufficient to deter a person of "ordinary firmness" from exercising his First Amendment rights.[8]

---

[7]    Additionally, Craddock has not presented any evidence of a policy or practice sufficient to establish <u>Monell</u> municipal liability for Darby Borough based on this conduct.  Because these allegations are made against unnamed individuals, municipal liability would be Craddock's only basis for recovery.

[8]    Following the "keying up" incident, Craddock successfully reported the incident to DelCom, the District Attorney, and the Attorney General, making it clear that he was not in fact deterred by the allegedly retaliatory conduct.

### 2.   Darby Borough Police Officers' Harassing Calls

There is no evidence in the summary judgment record to support Craddock's claim that the harassing phone calls he received following the incident were made by Darby Borough police officers.  Summary judgment cannot be avoided by relying on speculation, and "inference based on speculation...does not create a material factual dispute."  Robertson v. Allied Sig., Inc., 914 F.2d 360, 383 (3d Cir. 1990).  Indeed, Craddock offers only unsupported speculation that he received calls from Darby officers; Craddock acknowledged during his deposition that he had no factual basis for believing that the calls were made by members of the Darby Borough police force.

### 3.   April 26, 2011 Letter from Smythe's Attorney

Finally, there is no evidence in the summary judgment record to support Craddock's claim that the letter from Smythe's attorney was unlawfully retaliatory.  The letter sent on April 26, 2011, stated that Craddock had "no extra privileges as an officer of the Colwyn Police Department when setting foot into Darby Borough."  The letter continued:  "Specifically, your actions of March 18, 2011 amounted to nothing less than a crime. Should you choose to behave in that manner again while on Darby Borough soil, you will be promptly arrested and prosecuted."

Although Craddock testified that he only returned to Darby Borough while on duty – and not for personal reasons – after receiving the letter, a reasonable jury could not find the text of the letter itself sufficiently threatening or intimidating to deter an person of "ordinary firmness" from reporting the March 18 incident to the authorities.  The letter did not threaten Craddock with arrest if he returned to Darby Borough.  Rather, the letter refers to specific conduct on the part of Craddock that the attorney suggests should be avoided. Thus, the letter cannot be the basis for a First Amendment retaliation claim.

B.   <u>Fourth Amendment Excessive Force Claims</u>

Craddock has brought Fourth Amendment excessive force claims based on (1) Smythe allegedly slamming his leg in the door of his patrol vehicle; (2) Baker's failure to intervene in the door-slamming; and (3) Baker pushing him in the chest. There is not sufficient evidence in the summary judgment record to support Craddock's Fourth Amendment claims.  The Court, therefore, grants the defendants' motion for summary judgment as to all Craddock's Fourth Amendment claims.

1.   Excessive Force Claim Against Smythe

Although there is a factual dispute as to whether
Smythe shut the patrol vehicle door on Craddock's leg, the facts
taken in the light most favorable to Craddock fail to establish
an excessive force claim under the Fourth Amendment because he
has failed to demonstrate that he was seized by Smythe's
conduct.  Given the lack of a seizure, Craddock's excessive
force claim against Smythe is properly analyzed under the due
process clause of the Fourteenth Amendment.  Craddock has also
failed to establish a Fourteenth Amendment violation, however,
because he has not produced evidence of any conduct on the part
of Smythe that shocks the conscience.

To establish a claim for excessive force under the
Fourth Amendment, a plaintiff must show that a "seizure"
occurred and that it was unreasonable.  Estate of Smith v.
Marasco, 318 F.3d 497, 515 (3d Cir. 2003).  A seizure occurs
when police have restrained a citizen through either physical
force or show of authority and occurs only when a reasonable
person would have believed he was not free to leave a situation.
Graham v. Connor, 490 U.S. 386, 395 n. 10 (1989); United States
v. Mendenhall, 446 U.S. 544, 553-54 (1980).

Fleeting physical contact — even tortious contact — by
a police officer that does not meaningfully limit a plaintiff's
movement is not a seizure under the Fourth Amendment.  Gottlieb

13

v. Laurel Highlands School Dist., 272 F.3d 168, 172 (3d Cir. 2001); see also Ashton v. City of Uniontown, 459 F. App'x 185, 189-90 (3d Cir. 2012)(finding that police officer's striking with a closed fist was not a Fourth Amendment violation because plaintiff was free to walk away immediately following the incident); Smith v. Dep't of General Servs., Pa. Capitol Police Bureau, No. 04-cv-0997 2005 WL 1563505 (M.D.Pa. July 1, 2005), aff'd 181 F. App'x 327 (3d Cir. 2006)("[T]he solitary act of grabbing [plaintiff's] elbow was not a seizure for Fourth Amendment purposes."); Coleman v. Cerski, No. 04-cv-1423 2007 WL 2908266 at *7 (M.D.Pa. October 4, 2007)(noting that no seizure occurred when defendant, after grabbing plaintiff's foot, immediately let it go).

Craddock was not seized by Smythe.  Any physical contact by Smythe was fleeting, and did not limit Craddock's movement in any way.  Additionally, Craddock did not submit to any show of authority by Smythe.  In fact, after the door was allegedly slammed Craddock exited his vehicle and after Smythe. Craddock's own testimony makes it clear that his movement was not restricted in any way.

Craddock also claims he was unlawfully seized by the Darby Borough Police Department when he could not immediately leave the scene of the assault due to being surrounded by the emergency response vehicles that had arrived on the scene.  A

14

seizure must be intentional, however, and cannot be the "accidental effect of otherwise lawful government conduct." Brower v. Cnty. of Inyo, 489 U.S. 593, 596-97 (1989).  Craddock has presented no evidence that the responding emergency vehicles intentionally kept him from leaving the scene.  Rather, the record is clear that the vehicles were lawfully responding to the assault and any temporary limitation of Craddock's movement was incidental to their emergency response.  Thus, Craddock was not seized by the placement of the vehicles.

Because neither Smythe's door slamming nor the parking of the emergency vehicles could have caused Craddock to be seized under the Fourth Amendment, Craddock's claim against Smythe is properly evaluated under the Fourteenth Amendment.

The Fourteenth Amendment's substantive due process clause protects against arbitrary government action.  Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845 (1998).  A substantive due process violation based on excessive force occurs when an officer's conduct shocks the conscience.  Gottlieb v. Laurel Highlands Sch. Dist., 272 F.3d 168, 172 (3d Cir. 2001). Conscience shocking conduct involves "only the most egregious official conduct" that is "brutal," "offensive," and "intended to injure." Lewis, 523 U.S. at 846-47, 849; Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008).

Courts in this Circuit and others have been reluctant to find that a fleeting incident of assault can be "conscience shocking." Ashton v. City of Uniontown, 459 F. App'x at 190 (finding a single closed-fist hit, though "inappropriate," did "not rise to conscience shocking behavior."); see also Lillard v. Shelby Cnty. Bd. Of Educ., 76 F.3d 716, 725-26 (6th Cir. 1996)("It is simply inconceivable that a single slap could shock the conscience."). Courts have also recognized that the injuries alone do not make improper contact "brutal" or "conscience shocking." Johnson v. School Dist. Of Philadelphia, No. 06-cv-4826 2008 WL 3927381 at *6 (E.D.Pa. August 21, 2008) (finding that conduct did not shock the conscience when plaintiff suffered only minor injuries); see also Smith v. Dep't of Gen. Servs. of PA, 181 F. App'x 327, 330-31 (3d Cir. 2006).

Smythe's conduct, as alleged by Craddock, does not rise to the level of a Fourteenth Amendment violation. The conduct alleged by Craddock was extremely brief and the resulting injury was minor. A reasonable jury could not find that the Smythe's conduct shocked the conscience.

## 2. Failure to Intervene Claim Against Baker

Craddock has also alleged that Baker breached his duty to intervene in the alleged assault by Chief Smythe. The Court grants the defendants motion for summary judgment because: (1)

16

Craddock has failed to establish an excessive force claim against Smythe and (2) even if Craddock had produced sufficient evidence to support an excessive force claim against Smythe, the act alleged was instantaneous and offered Baker no opportunity to intervene.

Police officers have a duty to protect a victim from another officer's use of excessive force if there is a reasonable and realistic opportunity to intervene. Smith v. Mensinger, 293 F.3d 641, 651 (3d Cir. 2002) (citations omitted). Thus, an officer is only liable for failing to intervene if the plaintiff can show that: (1) another officer violated the plaintiff's constitutional rights; (2) the officer had a reason to believe that his colleague was committing a constitutional violation; and (3) he had a reasonable and realistic opportunity to intervene. Id. at 650-51; see also Knox v. Doe, 487 F. App'x 725, 728 (3d Cir. 2012). Courts in this District have found that officers only have an opportunity to intervene when excessive force is used in the officer's presence or if the officer saw his colleague use excessive force and had time to intervene. Bean v. Ridley Twp., No. 14-5874 2015 WL 568640, *11 (E.D.Pa. Feb. 10, 2015); (Bryant v. City of Philadelphia, No. 10-3871 2012 WL 258399, *8 (E.D.Pa. January 27, 2012); Sullivan v. Warminster Twp., 765 F. Supp. 2d 687, 701-02 (E.D. Pa. 2011).

Craddock's failure to intervene claim fails because, as discussed above, the summary judgment record contains no evidence that Smythe used excessive force.  Further, even if Craddock had established an excessive force claim against Smythe, the assault as described by Craddock was brief and concluded within one or two seconds, offering Baker no reasonable opportunity to intervene.

3.   Excessive Force Claim Against Baker

Craddock has alleged that Baker violated his Fourth Amendment rights when he pushed him in the chest to separate him from Smythe.  Because there is no evidence in the summary judgment record to establish Baker's conduct as unreasonable, the defendants' motion for summary judgment is granted.

As discussed in detail in Part I, for Fourth Amendment purposes, a "seizure" occurs when police have "by means of physical force or show of authority...in some way restrained the liberty of a citizen."  Graham v. Connor, 490 U.S. 386, 395 n. 10 (1989).

Craddock has provided sufficient evidence for a reasonable jury to conclude that he was seized by Baker.  It is undisputed – and apparent to the Court in the video produced by the defendants – that Baker was controlling Craddock's movements by pushing him in the chest to keep him away from Smythe.

18

To establish a claim for excessive force under the Fourth Amendment, however, a plaintiff must show not only that a seizure occurred, but also that the seizure was unreasonable. Estate of Smith v. Marasco, 430 F.3d at 148 (internal quotations and alterations omitted); see also Curly v. Klem, 499 F.3d 199, 206-07 (3d Cir. 2007) (quoting Graham v. Connor, 490 U.S. 386, 388 (1989). The test for reasonableness is whether, under the totality of the circumstances, the defendant officer's actions were "objectively reasonable in light of the facts and circumstances confronting them, without regard to the underlying intent or motivations." Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004)(quoting Graham, 490 U.S. at 396 (internal quotations omitted)). Although reasonableness under the Fourth Amendment is ordinarily a jury question, summary judgment is appropriate if the Court concludes, taking the facts in the plaintiff's favor, that the "use of force was objectively reasonable under the circumstances." Abraham v. Raso, 183 F.3d 279, 290 (3d Cir. 1999).

The video of the incident shows Baker pushing Craddock away from Smythe and other Darby Officers after Craddock had exited his vehicle and rushed toward Smythe. Baker pushed Craddock's chest to move him away from Smythe; Baker did not push Craddock to the ground or injure Craddock in any way. His force was limited and targeted to the specific purpose of

keeping Craddock away from Smythe.  Based on the limited nature of the force used and the fact that it was used to separate individuals on the verge of fighting, a reasonable jury could not find that Baker's actions were unreasonable given the circumstances.

C.   Fourteenth Amendment Equal Protection Claims

Craddock has claimed that he was subject to race-based discrimination in violation of his Fourteenth Amendment rights. The exact basis for Craddock's claim is unclear from his pleadings or briefing.  Craddock, however, has not presented any evidence to establish that defendants' conduct violated his right to equal protection under the Fourteenth Amendment because he has not presented facts that he was subject to discriminatory conduct or treated differently than similarly situated others. The Court, therefore, grants defendants' motion for summary judgment as to Craddock's equal protection claim.

The Equal Protection Clause of the Fourteenth Amendment protects citizens from unreasonable police action that is based on race.  Specifically, the Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1.  To establish an equal protection claim, a plaintiff must demonstrate the existence of

purposeful discrimination.  Keenan v. City of Philadelphia, 983 F.2d 459, 465 (3d Cir. 1992).  Purposeful discrimination is demonstrated with evidence that a plaintiff has been treated differently because of his membership in a suspect class or that he has been treated differently from other similarly situated individuals.  See id.; City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985); Young v. New Sewickley Twp., 160 F. App'x 263, 266 (3d Cir. 2005).

The summary judgment record contains no evidence that Craddock was subject to race-based discriminatory conduct, beyond the allegations in his complaint that the white defendants noticed that he was African American.  Craddock has also failed to present evidence of any discriminatory conduct on the part of the defendants.  Thus, a reasonable jury could not find that the defendants violated Craddock's Fourteenth Amendment right to Equal Protection rights.

Finally, Chief Smythe's alleged use of a racial epithet is not sufficient to establish an equal protection claim.  "The use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution."  Ganaway v. Berks Cnty. Prison, 439 F. App'x 86, 91 (3d Cir. 2011).  Standing alone, verbal harassment does not deny an individual equal protection of the laws.  Id.

D.    Conspiracy Claim Under 42 U.S.C. § 1985

Craddock has alleged that Baker and Smythe conspired to deprive him of his First, Fourth, and Fourteenth Amendment rights in violation of Section 1985(3).  Craddock's Section 1985 claim fails because the summary judgment record does not contain evidence that Smythe and Baker formed a conspiracy.  The Court, therefore, grants the defendants' motion for summary judgment on Craddock's Section 1985 claim.

To establish a cause of action under Section 1985, a plaintiff must provide evidence that demonstrates:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006)(citing United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828-29 (1983)).

To survive a motion for summary judgment on a Section 1985(3) claim, a plaintiff must put forward specific facts suggesting there was an agreement, combination, or understanding among the alleged conspirators to take action.  See Estate of Oliva v. New Jersey, 604 F.3d 788, 802 (3d Cir. 2010)(citing Farber, 440 F.3d at 134 (3d Cir. 2006); see also Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974).  Summary judgment

is appropriate where the plaintiff has provided insufficient evidence to show the conspirators formed a mutual understanding to deprive the plaintiff of his civil rights.  Startzell v. City of Philadelphia, 533 F.3d 183, 205 (3d Cir. 2008).

The summary judgment record does not contain sufficient evidence that Smythe and Baker formed a conspiracy. Craddock's evidence of a conspiracy consists of: (1) the fact that Smythe and Baker spoke to each other upon arriving at the scene of the March 18, 2011 incident and (2) Craddock's own unsubstantiated suspicions that the two conspired.  A reasonable jury thus could not find that Smythe and Baker conspired.


E.   Monell Claim for Municipal Liability

Craddock has asserted a claim against Darby Borough for municipal liability based on Chief Smythe and Corporal Baker's alleged constitutional violations. Craddock's Monell claim fails because there are no facts in the summary judgment record that establish any underlying constitutional violations.

Without an underlying constitutional violation, a municipality cannot be subject to Monell liability.  See Customers Bank v. Mun. of Norristown, 942 F. Supp. 2d 534, 546 (E.D.Pa. 2013); see also City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986.  As discussed above, Craddock has not established any underlying constitutional violations on the part

23

of Smythe or Baker.  The Court, therefore, grants the defendants' motion for summary judgment as to Craddock's <u>Monell</u> claim.

### F.  <u>Qualified Immunity</u>

The Court need not reach the question of qualified immunity question because there is no evidence in the record to support Cradock's constitutional claims.  <u>Scott v. Harris</u>, 550 U.S. 372, 127 (2007); <u>Curley v. Klem</u>, 499 F.3d at 207 (explaining that only if the Court finds a constitutional violation does it engage in a qualified immunity analysis).

### G.  <u>Pennsylvania Civil Conspiracy Claim</u>

Craddock's Pennsylvania law civil conspiracy claim fails for the same reason his Section 1985 claim fails: there is no evidence in the summary judgment record of an agreement between Smythe and Baker.  The Court, therefore, grants the defendants' motion for summary judgment as to Craddock's civil conspiracy claim.

A cause of action for civil conspiracy under Pennsylvania law requires that a plaintiff show (1) a combination of two or more persons who are acting with a common purpose to do an unlawful act; (2) an overt act done in furtherance of the common purpose; and (3) actual damage.  <u>Gen.</u>

Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313
(3d Cir. 2003)(citing Strickland v. Univ. of Scranton, 700 A.2d
979, 987-88 (Pa. 1997).  The plaintiff must show that the
alleged conspirators reached an agreement to commit an unlawful
act.  Scully v. US WATS, Inc., 238 F.3d 497, 516 (3d Cir. 2001).
"Mere suspicion or the possibility" of an agreement is not
sufficient to establish a conspiracy claim, nor is "proof of
acts which are equally consistent with innocence." Id. (citing
Fife v. Great Atl. & Pac. Tea Co., 356 Pa. 265, 266 (Pa. 1947).

        As explained in above, there is no evidence in the
summary judgment record to establish that Smythe and Baker
agreed or acted with a common purpose to do an unlawful act.


        H.    Pennsylvania Human Relations Act Claim

        Craddock has claimed that Darby Borough, Smythe, and
Baker violated the Pennsylvania Human Relations Act ("PHRA") by
acting with "racial animus" when subjecting him to excessive
force.  Craddock, however, has not presented sufficient evidence
that his employer Colwyn Borough engaged in discriminatory
action prohibited by the PHRA.  In most relevant part, the PHRA
prohibits discriminatory employment conduct, not discriminatory
conduct generally, and thus Craddock does not have any recourse
under the act.  The Court, therefore, grants the defendants'

motion for summary judgment as to Craddock's claims under the PHRA.

The PHRA provides that it is an unlawful discriminatory practice for any employer to discharge from employment or otherwise discriminate against an employee on the basis of race. 43 Pa. Stat. Ann. § 955(a). The PHRA further forbids "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice...." § 955(e).  The only potentially relevant sections of the act are concerned only with the actions of the plaintiff's employer, not unrelated third parties.

If the employer itself is not liable for any discriminatory practice then another party cannot be held liable for aiding and abetting under the PHRA. 43 Pa. Stat. Ann. § 955(e); see also Scott v. Sunoco Logistics Part., LP, 918 F. Supp. 2d 344, 357 n.5 (E.D.Pa. 2013) (citing Unangst v. Dual Temp Co., Inc., No. 10-6811 2012 WL 931130 at *9 (E.D.Pa. Mar. 19, 2012); Eldeeb v. AlliedBarton Sec. Servs. L.L.C., No. 07-669 2008 WL 4083540 at *11 (E.D.Pa. Aug. 28, 2008).

Craddock has not put forward any evidence that his employer, Colwyn Borough, engaged in any unlawful discriminatory conduct that violated the PHRA, making it impossible for him to support a PHRA claim.

III. <u>Conclusion</u>

      The Court grants the defendants' motion for summary judgment in its entirety.  The only claims that remain are Craddock's state law claims for assault and battery against Smythe and Baker.  Under 28 U.S.C. § 1367(c), a district court may in its discretion decline to exercise supplemental jurisdiction over state law claims if the Court has dismissed all claims over which it had original jurisdiction.  <u>See</u> <u>Growth Horizons, Inc. v. Delaware Cnty., Pa.</u>, 983 F.2d 1277, 1284-85 (3d Cir. 1993).  Because the Court has dismissed all claims over which it had original jurisdiction, it will decline to exercise supplemental jurisdiction over the remaining state law claims and will dismiss these claims.

      An appropriate order shall issue.